IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONA MUSTAFA, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) No. 15-CV-06997 |
| | ) |
| NSI INTERNATIONAL, INC. et al. | ) Judge John J. Tharp, Jr. |
| | ) |
| Defendant(s). | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mona Mustafa brings suit against her former employer, NSI International, Inc. ("NSI"), and its counsel, Milman Labuda Law Group, PLLC ("MLLG"), alleging that NSI and MLLG retaliated against her, in violation of Title VII, 42 U.S.C. § 2000e-3(a), for filing a disability discrimination complaint. The alleged retaliation? Seeking to enforce settlement agreements in which Mustafa released her discrimination and retaliation claims. Mustafa also alleges that the legal complaints NSI and MLLG filed defamed her and that NSI disparaged her in a remark made to an industry recruiter by an NSI employee. Finally, Mustafa alleges that MLLG committed legal malpractice—against *her*—by practicing law in Illinois without being licensed to do so, in violation of Supreme Court Rule 707. NSI and MLLG moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and for sanctions under Fed. R. Civ. P. 11. Because her claims are time-barred and fail to state any plausible claim, the motion to dismiss is granted. Further, the Court finds that the claims Mustafa has asserted in this suit are frivolous and likely intended to harass the defendants, and therefore grants the motion for sanctions.

## BACKGROUND[1]

Mustafa claims that she began working for NSI in July 2007, and that NSI terminated her employment on December 12, 2008. Compl. ¶ 17, ECF No. 1. Mustafa is currently a citizen of Illinois, while NSI is a Delaware corporation headquartered in New York. *Id*. at 2. When she was employed by NSI, Mustafa worked in Lake Villa, Illinois. *Id.* at ¶ 17. NSI has asserted it terminated Mustafa for poor work performance, but Mustafa claims NSI began discriminating against her on the basis of a disability (breast cancer) several months before her termination and that its discrimination has continued to the present. *See* Compl. ¶18; *NSI Int'l, Inc. v. Mustafa* ("*NSI I*"), No. 09-CV-1536(JFB)(AKT), 2009 WL 2601299, at *1 (E.D.N.Y. Aug. 20, 2009). Following her termination, Mustafa did not go gently into that good night,[2] but instead began an aggressive campaign of litigation against NSI and its law firm, MLLG.

On March 5, 2009, Mustafa filed a complaint with the Illinois Department of Human Rights ("IDHR") alleging employment discrimination against NSI on the basis of her disability because she was fired without being given a reason. *See* Compl. Ex. 11. (Mustafa's original discrimination complaint will be referred to as *Mustafa I*). On March 18, 2009, NSI filed suit against Mustafa in New York state court, which Mustafa removed to federal court on April 14, 2009 (No. 09-cv-01536). In the New York case (hereafter, *NSI I*), NSI alleged that by filing her IDHR complaint, Mustafa had violated a previous verbal settlement agreement. *NSI I*, 2009 WL 2601299, at *1-2. Mustafa then filed a second IDHR complaint (*Mustafa II*) on September 15,

---

[1] The facts in this section are taken from the complaint, the motion to dismiss, and their attached exhibits. The Court further takes judicial notice of the decision in the New York case currently being litigated by the parties. *See NSI International, Inc., v. Mona Mustafa*, 2009 WL 2601299 (E.D.N.Y. Aug. 20, 2009) and subsequent decisions in the same case at 2014 WL 12539347 (Feb. 25, 2014), 2014 WL 1232941, (Mar. 26, 2014), 613 Fed.Appx. 84 (2d Cir. 2015), and 2016 WL 3014666 (May 24, 2016).

[2] Dylan Thomas, *Do not go gentle into that good night*, THE POEMS OF DYLAN THOMAS 239 (Daniel Jones ed., New Directions Publishing 2003) (1971).

2009 alleging that NSI had retaliated against her for filing the previous IDHR complaint by filing the *NSI I* state court suit. *See* Compl. ¶ 20; IDHR Compl. at ¶ 8, ECF No. 20, Ex. D. On August 9, 2010, Mustafa withdrew *Mustafa* I, her original IDHR complaint of employment discrimination regarding her termination. *See NSI Int'l, Inc. v. Mustafa* ("*NSI II*"), No. CV125528JFBAKT, 2014 WL 12539347, at *3 (E.D.N.Y. Feb. 25, 2014), *report and recommendation adopted*, No. 12-CV-5528 JFB AKT, 2014 WL 1232941 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 84 (2d Cir. 2015). *Mustafa II*, however, remained pending.

In July 2011, Mustafa and NSI entered into a written agreement to settle *NSI I* as well as Mustafa's administrative agency claims, including *Mustafa II*.[3] *See* Agreement and Release, ECF No. 20, Ex. C. In that agreement, NSI agreed to pay Mustafa $60,000, and Mustafa agreed to withdraw and waive any and all claims against NSI. *Id*. Mustafa alleges that, at some point after signing this agreement, an NSI employee named Brian Waldman made a disparaging comment about her to an industry recruiter. Compl. ¶ 85. Pursuant to the settlement agreement, NSI's suit against Mustafa was dismissed, but Mustafa did not reciprocate by withdrawing her pending retaliation complaint (*Mustafa II*) with the IDHR. Nevertheless, it appears that at NSI's request her retaliation claim was dismissed by the IDHR at some point due to a lack of substantial evidence establishing a *prima facie* case of harassment. *See* Compl. Ex. 13 at 2. Neither party provided any record of this decision, but Mustafa included with her complaint the decision of the Illinois Human Rights Commission ("IHRC"), which adjudicates appeals from IDHR decisions not to proceed with cases and reviews claims that do proceed on the merits. The IHRC revived Mustafa's IDHR retaliation claim on appeal, finding that Mustafa had established a *prima facie*

---

[3] Mustafa had also filed a complaint with the Illinois Department of Labor which appears to have been pending at the time of the settlement (case no. 09-005080). *See* Compl. ¶ 4; Agreement and Release, ECF No. 20 , Ex. C. The details of this charge are nowhere in the record, but the Court assumes they also related to NSI's termination of her employment.

case of harassment by NSI. *See id.* at 3. That decision is dated August 8, 2012, well after Mustafa and NSI had signed the written settlement of her claims in July 2011. *See id. at* 4. Mustafa appears to have continued pursuing the IDHR claim from August of 2012, when she received a notice of substantial evidence (*see* Compl. Ex. 12), until June 28, 2013, when the IHRC[4] found that the complaint was frivolous and recommended dismissal with sanctions. *See* ECF No. 20, Ex. E and F. That recommendation was ultimately approved by the IHRC on October 28, 2014. *See* ECF. No. 20, Ex. G. That approval ended the proceedings on Mustafa's second IDHR complaint (which, again, had alleged retaliation for the filing of her first IDHR claim, which had alleged discrimination).

On November 8, 2012, while Mustafa continued to pursue her IDHR retaliation claim, NSI filed a second complaint (*NSI II*) in the Eastern District of New York, asserting that Mustafa was in breach of the 2011 settlement agreement. *See NSI II*, 2014 WL 12539347, at *4. NSI was granted summary judgment on this breach of contract claim on February 25, 2014. *See NSI II,*

---

[4] The Illinois agency process can be a bit confusing and requires some explanation. Under the Illinois Human Rights Act, 775 ILCS 5/7A-102, a person who believes she has been discriminated against first files a charge with the Illinois Department of Human Rights within 180 days of the violation. *See* 775 ILCS 5/7A-102(A). Once the claim has been filed, the IDHR begins investigating the complaint and may engage in mediation if the parties agree. *Id.* at § 7A-102(B). The IDHR, upon completing its initial investigation, makes a determination of whether or not substantial evidence supports the charge. *Id.* at § 7A-102(D). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance." *Id*. If the IDHR finds there is substantial evidence, then the IDHR files a complaint on the plaintiff's behalf with the Illinois Human Rights Commission or a state court. *Id*. If the IDHR determines there is not substantial evidence, that decision can be appealed to the IHRC. *Id.* If the IHRC finds on appeal that there was substantial evidence to support a *prima facie* case on the charge, it is sent back to the IDHR, which must then file a case with either the IHRC or an appropriate state court (the plaintiff chooses which venue). *Id*. The state court or an IHRC hearing officer then adjudicates the case on the merits. This merits decision requires a plaintiff prove her case by a preponderance of the evidence. *See* 775 ILCS 5/8A-102(I). If the hearing officer finds the complaint is not so supported, they issue a "recommended order of dismissal" which is then formally approved by the IHRC. *Id.* This can, apparently, lead to a series of events like the one that ensued here, where the IHRC reverses the IDHR's lack of substantial evidence finding but later dismisses the case on the merits as frivolous upon a more demanding review of the record.

4

2014 WL 12539347 at *15; *NSI Int'l, Inc. v. Mustafa*, No. 12-CV-5528 JFB AKT, 2014 WL 1232941, at *5 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 84 (2d Cir. 2015). The judge presiding over that case (Judge Bianco) awarded NSI $80,645 in damages for Mustafa's breach of the signed settlement agreement by continuing her complaints against NSI. *See* Judgment, ECF No. 20, Ex. A and B. Mustafa appealed that Court's grant of summary judgment, but the Second Circuit affirmed the decision on August 25, 2015. *See NSI Int'l, Inc. v. Mustafa*, 613 F. App'x 84, 85 (2d Cir. 2015). Unbowed following the Second Circuit's decision, Mustafa refused to produce post-judgment information needed by NSI's counsel and continued filing motions for reconsideration that attempted to relitigate the New York case. *See NSI Int'l, Inc. v. Mustafa*, No. CV125528JFBAKT, 2016 WL 3014666, at *2 (E.D.N.Y. May 24, 2016). As of the date of this order, Mustafa has an appeal of Judge Bianco's judgment on attorney fees pending while Judge Bianco has recently denied Mustafa's motions for a new trial and motions to compel. *See NSI II*, Dkt. 138-140.

In March of 2015, Mustafa opened up a second front here in Illinois. While her appeal to the Second Circuit was ongoing, Mustafa filed another discrimination charge with the Equal Employment Opportunity Commission in Chicago alleging NSI was discriminating against her by filing "legal actions" against her (*Mustafa III*). Compl. Ex. 1 at 1. The EEOC closed its file and issued a right to sue letter on May 15, 2015. *Id.* at 2. This is the right to sue letter under which Mustafa filed the present case.

After the filing of *Mustafa III*, NSI requested that Judge Bianco issue a litigation injunction barring Mustafa from filing "any actions in any court or administrative agency in the United States without first obtaining permission from this Court." *NSI Int'l v. Mustafa*, No. 12-CV-5528JFBAKT, ECF. No. 89 (March 19, 2015). In an unpublished order, Judge Bianco

5

denied the request, noting that such requests are subject to a "heightened standard" and none of Mustafa's lawsuits at that time had been deemed frivolous.[5] *NSI Int'l v. Mustafa*, No. 12-CV-5528JFBAKT, ECF. No. 92 (filed as Compl. Ex. 20). However, Judge Bianco warned Mustafa that "any future frivolous filings may result in sanctions, including a litigation injunction." *Id*.

Throughout this process, MLLG has represented NSI and Mustafa has brought claims against MLLG and its attorneys on a number of occasions. Mustafa has filed complaints requesting investigation of Joseph Labuda and Jamie Felsen of MLLG by the Attorney Registration and Disciplinary Commission at least three times (in 2010, 2012, and 2015). Compl. ¶ 19. MLLG was admitted to practice law in Illinois *pro hac vice* by an administrative law judge with the Illinois Human Rights Commission on December 12, 2012. *See* Order of Human Rights Commission, ECF. No 20, Ex. H. Mustafa's complaint alleges that MLLG has violated Title VII and the Illinois Human Rights Act because MLLG was not admitted to practice by the Illinois Supreme Court, which she believes is the only court able to admit attorneys to practice in any way. *See* Compl. ¶ 37.

Mustafa filed this complaint on August 11, 2015. The claims in her complaint are discussed in greater detail below.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[5] That was accurate so far as "law suits," but not as to Mustafa's administrative claims: the retaliation claim Mustafa had asserted in *Mustafa II* had been found to be frivolous by the IHRC in June 2013.

inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, but conclusory allegations merely restating the elements of a cause of action do not receive this presumption. *See Iqbal*, 556 U.S. at 679. Here, Mustafa's claim fails to satisfy this standard because the allegations in her complaint fail to state a plausible claim under Title VII or Illinois defamation law.

**I.      Counts I, II, III, and IV: Retaliation Claims**

Mustafa claims that defendants NSI and MLLG retaliated against her (for filing her original IDHR complaint alleging discrimination) in violation of Title VII, 42 U.S.C. § 2000e-3(a), by filing case 09-09931 in New York state court on March 5, 2009 (*NSI I*) and case 12-5528 in the Eastern District of New York on November 8, 2012 (*NSI II*). Compl. ¶ 35. Additionally, Mustafa claims that NSI and MLLG continued their retaliation against her for filing that initial discrimination complaint by requesting, on March 19, 2015, that the EDNY impose a litigation injunction against her. *Id.* ¶ 69. These claims are baseless.[6]

To begin, Mustafa's retaliation claims against MLLG fail under the 12(b)(6) standard because Mustafa did not allege that MLLG was her employer and because she did not name MLLG as a defendant in the EEOC charge. Title VII prohibits employers from discriminating against their employees in retaliation for engaging in protected conduct. 42 U.S.C. § 2000e-3(a). When a plaintiff's Title VII claim does not allege an employment relationship between the parties, the plaintiff has failed to state a claim. *Small v. Chao*, 398 F.3d 894, 897-98 (7th Cir.

---

[6] Mustafa's response to the motion to dismiss fails to address most of the motion's substance, instead focusing on perceived procedural issues (such as the defendants' purported failure to file a "true statement of corporate ownerships" in the Eastern District of New York) and her notion that MLLG's motion should be denied on the basis that its attorneys are not admitted to the Illinois bar. *See* Mem. in Opp., ECF No. 53, at 6-8.

2005). Mustafa does not allege in her Complaint that MLLG was her employer at any point in time. Therefore, Mustafa's Title VII retaliation claim must fail.

Furthermore, even if Mustafa had alleged that MLLG was her employer, her claim against MLLG fails to state a claim because Mustafa did not name MLLG as a defendant in her EEOC charge. If a plaintiff does not name a defendant in the EEOC charge, the plaintiff cannot sue that defendant under Title VII: "[W]ithin ninety days after [the EEOC issues a notice of right-to-sue] a civil action may be brought ***against the respondent named in the charge*** . . ." 42 U.S.C. § 2000e-5 (emphasis added). *See also Young v. Ameritech/SBC, Inc.*, 83 F. App'x 801, 802 (7th Cir. 2003) (affirming dismissal of defendant from claim because that defendant was not named in the EEOC complaint). In her March 9, 2015 EEOC charge that gave rise to this case, Mustafa was required to name the respondents that she charged with discrimination. Mustafa listed NSI and not MLLG. Compl. 31. In the EEOC's right-to-sue letter based on that charge, the only respondent named was NSI. Compl. 32. Because Mustafa did not name MLLG as a defendant in her EEOC charge and because MLLG was not her employer, Mustafa's retaliation claims against MLLG fail to state a claim upon which relief can be granted as a matter of law and, accordingly, are dismissed with prejudice.[7]

Mustafa's retaliation claims against NSI also fail under the 12(b)(6) standard for a multitude of reasons. First, her claims that NSI retaliated against her by filing lawsuits on March 5, 2009 and on November 8, 2012 are time-barred. Title VII complaints must be filed with the EEOC within 300 days of alleged discriminatory conduct. 42 U.S.C. § 2000e–5(e)(1). "According to statute, a plaintiff in . . . Illinois must file a charge of discrimination with the

---

[7] Even if MLLG were an employer within the meaning of Title VII, the retaliation claims against MLLG would also fail for the same reasons that the retaliation claims against NSI fail, as discussed below.

EEOC or equivalent state agency within 300 days after the 'alleged unlawful employment practice.' The 300-day limit . . . begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured." *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) (citations omitted). Mustafa filed the EEOC charge underlying this case on March 9, 2015. Compl. ¶ 31. The alleged retaliatory lawsuits, however, were filed on March 18, 2009, Compl. ¶ 115, and November 8, 2012, Compl. ¶ 37—that is, 2,182 days and 851 days, respectively, before Mustafa filed her EEOC claim. Because both of those alleged injuries occurred and were known to Mustafa more than 300 days prior to when she filed her charge with the EEOC, Mustafa is barred from pursuing these claims under Title VII.

Mustafa briefly asserts in one of her responses that the retaliation against her is a "continuing action" and thus presumably is not time-barred. *See* Resp., ECF No. 52, at 2.[8] The Seventh Circuit, however, has recognized that "[t]he continuing violation doctrine is applicable only if it would have been unreasonable to expect the plaintiff to sue before the statute ran on the conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations." *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999). The continuing violation doctrine cannot be used to "incorporate untimely claims for discrete discriminatory actions" into an action. *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1027 (7th Cir. 2003). Like a firing or assault, the filing of a lawsuit is a discrete action that is not the sort of gradual or stealthy harassment the continuing violation rule is intended to cover.

---

[8] Mustafa filed two responses to the motion to dismiss, which are located at ECF No. 52 and 53. The first is marked as her "opposition to all defendant's [sic] rule 12(b)(6) motion to dismiss" and the second is marked as her "memorandum of law in opposition" to the motion. As this Court is required to liberally construe a pro se plaintiff's filings, the Court considers both of her responses. *See Ray v. Clements*, 700 F.3d 993, 1003 (7th Cir. 2012).

9

Even if Mustafa's claims for retaliation relating to NSI's two lawsuits were not barred by the statute of limitations, they, along with her retaliation claim based on NSI's request for a litigation injunction against her, would still fail. All instances of alleged retaliation in this case occurred after Mustafa's employment by NSI ended on December 12, 2008, Compl. ¶ 17; post-termination retaliation, however, is only actionable under Title VII if the retaliatory acts "have a nexus to her employment or impinge on her future employment prospects." *Keefe v. Mega Enterprises, Inc.*, No. 02 C 5156, 2005 WL 693795, at *10 (N.D. Ill. Mar. 23, 2005) (citing *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 888, 892-94 (7th Cir. 1996)). According to Mustafa's allegations, NSI filed its lawsuits to enforce alleged oral and written settlement agreements between itself and Mustafa and requested a litigation injunction to protect itself from current and future legal attacks by Mustafa. Compl. ¶ 37, 116-17, 136. None of these actions have any nexus to Mustafa's employment with NSI, nor do they have any relation to her ability to gain future employment.

Although Mustafa does allege that an NSI employee, Brian Waldman, "disparaged" her to an industry recruiter, that allegation is set forth only in Mustafa's defamation claim and is not alleged or argued to have been part of the retaliatory conduct. *See id.* at ¶ 85. There are no allegations that Waldman was aware of either Mustafa's discrimination claim or NSI's allegedly retaliatory lawsuits, or that he had been directed by NSI to retaliate against Mustafa by making negative comments to recruiters. Nor is it likely NSI would have encouraged Waldman to do so, given that the settlement agreement required NSI to provide Mustafa with "a neutral letter of reference." *See* Settlement Agreement, ECF No. 20, Ex. C. Furthermore, Mustafa provides no details on what this disparaging comment was, or whether Waldman had any knowledge of her original complaint, whether he had anything to do with NSI's filing of law suits against Mustafa,

10

or whether his alleged comment was known to anyone at NSI who did have any authority with respect to NSI's filing of law suits against Mustafa. *See, e.g., Bagwe v. Sedgwick Claims Mgmt. Servs.,* 811 F.3d 866, 889 n.64 (7th Cir. 2016) (negative recommendation not actionable when nothing suggesting call was made for retaliatory purposes); *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996) (employer must have "actual or constructive knowledge" of comments by coworkers and fail to address problems adequately before they can be held liable for those comments). The complaint provides no information about who Waldman is or in what context the remark was made, and there is therefore no basis to conclude that Waldman's remark could ever be imputed to NSI. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994) (employers only liable for employee's statements made in furtherance of employment). Therefore, NSI's post-termination actions are not actionable under Title VII, and Mustafa fails to state a claim of post-termination retaliation.

Mustafa's retaliation claims against NSI also fail because NSI's actions were not retaliatory in nature. Under § 704(a) of Title VII, discriminatory action is unlawful when it occurs ***because*** an employee has engaged in activity protected by Title VII. 42 U.S.C. § 2000e-3. Lawsuits for matters unrelated to protected activity do not constitute unlawful retaliation under Title VII unless the suit is independently an abuse of process. *Mlynczak v. Bodman*, 442 F.3d 1050, 1061 (7th Cir. 2006) (finding that a manager's defamation lawsuit against an employee was not the type of adverse action prohibited by 42 U.S.C. § 2000e–3(a)); *see also Hasan v. Foley & Lardner, LLP*, No. 04 C 5690, 2007 WL 2225831, at *10 (N.D. Ill. July 26, 2007), *rev'd in part*, 552 F.3d 520 (7th Cir. 2008), *as corrected* (Jan. 21, 2009) (threat of a lawsuit for the disclosure of confidential information is not retaliation, where there is no evidence that the suit would be an abuse of process). NSI's allegations in the New York lawsuit exclusively concerned

her failure to adhere to the settlement agreement (her breach of contract), and did not concern at all the content of the breaching activity. *See* Compl. Ex. 17. Mustafa could have brought a completely unprotected claim against NSI regarding her employment, and NSI would still have filed the same breach of contract complaint in New York. Mustafa alleges no facts indicating that NSI's actions were independently abuses of legal process. On the contrary, that NSI prevailed in its suit against Mustafa to enforce the written settlement demonstrates that its actions were not meritless or an abuse of process. Because NSI's legal actions were unrelated to protected activity under Title VII and were not abuses of process, those actions were not retaliatory as a matter of law.

In short, Mustafa's retaliation claims against MLLG and NSI fail to state a claim upon which relief can be granted for a litany of reasons. Because MLLG was not an employer within the meaning of the statute, because the claims were time-barred by the statute of limitations, because NSI's post-termination actions did not fall within the narrow category of actionable post-termination actions under Title VII, and because the alleged retaliatory actions were not retaliatory in nature, Mustafa's claims against NSI and MLLG for retaliation under Title VII do not meet the 12(b)(6) standard. Therefore, the motion to dismiss with regard to the retaliation claims is granted with prejudice.[9]

---

[9] NSI also argues that Mustafa waived all claims she had accrued against NSI and its agents in a written settlement agreement in 2011. See Compl. ¶ 44-46; ASMD, Ex. C, ECF No. 20. That is only half right. Mustafa alleged no facts indicating that the agreement was not made knowingly or voluntarily, so her waiver of her right to sue under Title VII is valid with regard to her termination and the original New York suit and her IDHR proceedings. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009) (release of a Title VII claim is valid unless the party challenging the release presents specific evidence sufficient to question the validity of the release); *NSI Int'l, Inc. v. Mustafa*, No. CV125528JFBAKT, 2014 WL 12539347, at *6 (E.D.N.Y. Feb. 25, 2014), *report and recommendation adopted*, No. 12-CV-5528 JFB AKT, 2014 WL 1232941 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 84 (2d Cir. 2015) (finding the settlement agreement at issue valid). NSI's 2012 suit for the breach of the settlement agreement,

## II.     Counts V and VI: Defamation Claims

Mustafa claims that NSI and MLLG defamed her by stating in legal complaints that "[o]n December 12, 2008, NSI terminated Mustafa's employment for poor work performance," Compl. ¶¶ 74-75, and that "Mustafa entered into an oral settlement agreement." *Id*. ¶ 88. Additionally, Mustafa claims that Brian Waldman, an NSI employee, disparaged her to a "premier industry recruiter." *Id*. ¶ 85.

Like her retaliation claims, Mustafa's defamation claims relating to NSI's and MLLG's legal complaints are time-barred by the statute of limitations. Under Illinois law, there is a one-year statute of limitations for defamation claims. 735 Ill. Comp. Stat. 5/13-201. The statements that Mustafa had been terminated for poor work performance and that NSI had entered into an oral settlement with Mustafa were made on March 18 and March 24, 2009. Compl. ¶¶ 74-75, 88. These statements occurred more than one year before Mustafa filed this Complaint on August 11, 2015. Therefore, the defamation claims arising from NSI's and MLLG's statements within legal complaints are time-barred by the statute of limitations and must be dismissed with prejudice.

Even if the defamation claims relating to legal complaints weren't time-barred, however, they would still fail because the statements were privileged. In Illinois, judicial and quasi-judicial communications are absolutely privileged against defamation actions. *See Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 707-08 (7th Cir. 1994), *Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994). The allegedly defamatory statements that Mustafa was terminated for poor performance and that Mustafa had entered into an oral settlement agreement with NSI were

---

however, obviously was not covered by this waiver, so that settlement agreement does not, by itself, provide a basis to dismiss Mustafa's claims in this case to the extent that they are premised on the filing of that suit.

13

both made within legal complaints. Because the alleged statements were judicial communications, they are privileged against defamation actions. Accordingly, Mustafa's defamation claims for these privileged statements fail as a matter of law and are time-barred; the claims are dismissed with prejudice.

To the extent Mustafa seeks to advance her defamation claim on the basis of Waldman's alleged disparaging comment, it fails for the same reasons. First, that claim is also time-barred. While the complaint does not identify the date of the statement, in Paragraph 86 Mustafa states that she intended to call the recruiter as a witness in the IHRC proceeding. Mustafa, therefore, knew of the statement before the dismissal of the IHRC proceeding in June 2013, more than two years before she filed this suit. And in any event, the complaint fails to state a claim based on Waldman's remark because Mustafa does not allege the content of Waldman's statement. "Although a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba,* the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial review of its defamatory content." *Green v. Rogers*, 234 Ill. 2d 478, 492 (2009). Mustafa alleged that Brian Waldman made "disparaging" statements about her, but she did not allege with any precision or particularity what he allegedly said. Compl. ¶ 85. Nor has she alleged any facts to support any theory of respondeat superior by which NSI would be liable for Waldman's allegedly disparaging comment. For example, Mustafa has not alleged Waldman was acting in furtherance of NSI's business. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994). For all of these reasons, the defamation claim fails as a matter of law.

### III. Count VII: Malpractice Claim

Mustafa claims that MLLG committed "professional negligence" against her by practicing law in Illinois without being licensed to do so, in violation of Illinois Supreme Court

14

Rule 707. Compl. ¶¶ 90-99. As an initial matter, Mustafa lacks the standing required to bring the claim. To bring "a legal malpractice claim, a plaintiff must first establish the existence of an attorney-client relationship that gave rise to a duty of care on the part of the attorney." *Blue Waters Partners, Inc. v. Mason*, 2012 IL App (1st) 102165, ¶ 38 (Ill. App. Ct. 2012). MLLG did not represent Mustafa in any legal matter, and so it had no duty with respect to her. Mustafa lacks any standing to make a claim against MLLG for legal malpractice when MLLG had no duty with respect to her.

Even if Mustafa had standing to sue MLLG for malpractice, this claim, too, is time-barred by the statute of limitations. There is a two-year statute of limitations for legal malpractice under 735 Ill. Comp. Stat. 5/13-214.3. Mustafa alleged that MLLG appeared in Illinois from March 5, 2009 to the present. Compl. ¶ 92. MLLG was admitted to appear in Illinois on December 19, 2012. ASMD, Ex. H, ECF No. 20-8. Consequently, even assuming that MLLG violated Illinois Supreme Court Rule 707 by appearing in Illinois beginning on March 5, 2009, any violation of Rule 707 would have stopped on December 19, 2012 when MLLG was admitted to appear in Illinois. Under the terms of the Illinois statute, a malpractice claim accrues when "the person bringing the action knew or reasonable should have known of the injury for which damages are sought." 735 Ill. Comp. Stat. 5/13-214.3(b). By the time MLLG was admitted to appear, Mustafa knew or should have become aware of any Rule 707 violation. Mustafa filed this complaint on August 11, 2015, more than two years after any possible violation of Rule 707 accrued. Therefore, her complaint is barred by the statute of limitations.

Because Mustafa lacks standing to bring a legal malpractice claim against MLLG, and because her claim is time-barred by the statute of limitations, Mustafa's legal malpractice claim is dismissed with prejudice.

15

**IV. Sanctions**

NSI and MLLG further move for sanctions under Federal Rule of Civil Procedure 11(c). The defendants provided Mustafa with a letter warning they would move for sanctions and gave her the required 21 days to withdraw her complaint. *See* Def.'s Mem. in Sup. 4-5, ECF No. 40.

The Court has authority to impose sanctions, such as attorney's fees, for vexatious conduct by a litigant. *See Morjal v. City of Chi.*, 774 F.3d 419, 421-22 (7th Cir. 2014); Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."). NSI and MLLG request attorney's fees, costs, and a litigation injunction preventing Mustafa from filing further cases. *See* Def.'s Mot. for Sanctions, ¶ 8, ECF No. 39. Mustafa's claims were plainly time-barred and lack merit on their faces, as discussed above. Mustafa argues she should not be sanctioned because she "swears under oath that [her filings] are her representations to the Court." Pl.'s Opp. to Def.'s Mot. for Sanctions 6, ECF No. 43. However, a motion under Rule 11 is an objective test. *See Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000). Therefore it does not matter that these are Mustafa's intended "representations" when they are also plainly meritless.

Mustafa has also engaged in a pattern of repeated unnecessary filings, even after being directed by the Court to cease further non-emergency filings pending ruling on the motion to dismiss. *See* ECF No. 45, 51, 59, 64 (Court orders to cease all filings beyond emergency filings); ECF No. 46, 47, 52, 53, 57, 58, 60, 62, 63, 65, 68, 70, 72, 74, 76, 78, 80, 82, 84, 86 (various

motions, memoranda, and letters following the Court's directives to cease further filings). To give only one example, on October 31, 2016, Mustafa filed **10 motions** for entry of default judgment against every defendant in this case, including defendants she had never properly served in addition to the defendants who had responded to the complaint by filing this motion to dismiss.[10] In light of the meritless nature of Mustafa's claims and her various frivolous filings, the Court grants the motion for sanctions as to reasonable attorney's fees and costs regarding this action.

However, the Court denies at this time the request for a litigation injunction barring Mustafa from filing further lawsuits. The Court acknowledges that it has the ability to bar a litigant from filing future lawsuits, particularly in cases such as these where the plaintiff has unpaid outstanding sanctions. *See Gay v. Chandra,* 682 F.3d 590, 596 (7th Cir. 2012). However, Mustafa has no history of refusing to pay sanctions in the Northern District of Illinois and the Court will not decide for the Eastern District of New York (where NSI and MLLG previously

---

[10] Mustafa's motions for default judgment (ECF No. 68, 70, 72, 74, 76, 78, 80, 82, 84, 86) are denied. NSI and MLLG filed this motion to dismiss in response to the complaint, so they have not failed to defend this lawsuit. As to the remaining defendants, Mustafa moved early on for substituted service (ECF No. 7) and that request was denied on September 15, 2015 with instructions that service be effectuated within the guidelines of Rule 4(c). Mustafa provided purported proof of service at ECF No. 22, but all of these summonses were deposited with Joanne Ciccarono, who was only authorized to accept service on behalf of NSI. Under Rule 4, service on an individual must be delivered to the individual personally, to their dwelling, or to an authorized agent. Fed. R. Civ. P. 4(e). The affidavits of service Mustafa filed reflect that Ciccarono did not profess to have authorization to accept service for any individual; they state expressly that she indicated her authority to accept service "on behalf [of] the corporation." Thus, no proper service was ever effected on these defendants and the time provided to effect service provided by Rule 4(m) is long past. Furthermore, in addition to all of the reasons that her claims fail as to NSI and MLLG, Mustafa's claims against the individual defendants suffer from the fundamental defect that individuals are not personally liable under Title VII. *See United States EEOC v. AIC Sec. Investigations*, 55 F.3d 1276, 1282 (7th Cir. 1995). Thus, even had Mustafa effected timely service on the individual defendants, there can be no question that her claims against the individuals are, like the claims against NSI and MLLG, frivolous. Accordingly, there would be good cause not to default the individual defendants even had Mustafa timely served them.

obtained an award of sanctions) whether Mustafa's behavior in that case warrants such an injunction. Should Mustafa refuse to pay the sanction imposed in this case, or continue to submit meritless pleadings, or both, there may be a need for that extreme sanction; this order does not foreclose any future request the defendants may raise via motion and the Court may of course raise the issue on its own if warranted by the plaintiff's unreformed conduct.

\*     \*     \*

For the foregoing reasons, the motion to dismiss the complaint is granted. Mustafa's claims are dismissed with prejudice. The defendants' motion for sanctions is also granted; Mustafa is ordered to pay the reasonable attorney's fees and costs defendants have incurred in this litigation. Defendants NSI and MLLG are directed to submit their calculation of those reasonable fees and costs, with affidavits and other supporting documentation as needed, within 21 days of the entry of this order. The plaintiff must file any objections within 21 days thereafter, or any objections will be waived; Mustafa may include with her response information relevant to the question of her ability to pay an additional award of sanctions (beyond the award already imposed in the Eastern District of New York). Entry of judgment in favor of the defendants need not await resolution of the sanctions award and will be entered contemporaneously with this order. *Cassidy v. Cassidy*, 950 F.2d 381, 382 (7th Cir. 1991) ("Decisions on the merits and post-judgment decisions on attorneys' fees are separately appealable.").

Dated: November 16, 2016

John J. Tharp, Jr.
United States District Judge